**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ermin S.,

Petitioner,

v.

Crow Wing County Jail, United States of America,

Respondents.

Case No. 26-cv-200 (LMP/DLM)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on pro se Petitioner Ermin S.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Ermin S. challenges his detention without a bond hearing under § 1226(a) and the Due Process clause of the Fifth Amendment. Because he is subject to a final removal order, the Court ordered Petitioner to respond to an Order to Show Cause explaining why his Petition should not be dismissed. (Doc. 4.) In his Response, Petitioner raised new arguments challenging his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 7.) The Court accepted Petitioner's Response as an additional basis for his Habeas Petition and ordered Respondents to answer no later than March 27, 2026. (Doc. 8.) Respondents contend that that Petitioner's detention is lawful under *Zadvydas* because there is a significant likelihood of his removal in the reasonably foreseeable future. (*See generally* Doc. 9.) Ermin S.'s Petition now comes before the Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States

District Court.[1] The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Ermin S.'s Petition for Writ of Habeas Corpus (Docs. 1, 7) be granted.

**BACKGROUND**

Ermin S. is a native of Bosnia and Herzegovina ("Bosnia") and came to the United States as a refugee in 1996 when he was six years old. (Doc. 10 ¶¶ 4, 5.) In 1997, he became a Legal Permanent Resident ("LPR"). (*Id.* ¶ 7.) He has remained in the United States since and is married to a U.S. citizen and has a U.S. citizen child. (Doc. 1 at 7.)

In December 2016, Immigration and Customs Enforcement ("ICE") arrested Ermin S. in Grand Forks, North Dakota, and served him with a Notice to Appear. (Doc. 10 ¶ 11.) In May 2017, an immigration judge granted Ermin S. cancellation of removal. (*Id.* ¶ 13.) In May 2021, ICE again arrested and detained Ermin S. and served him with a new Notice to Appear. (*Id.* ¶ 17.) A month later, Ermin S. appeared before an immigration judge, who ordered him removed to Bosnia and denied all forms of relief. (*Id.* ¶ 18.) Ermin S. appealed this decision to the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 19.) On September 15, 2021, the BIA granted Petitioner's Motion to withdraw his appeal, which finalized his removal order. (*Id.* ¶ 20.) Ermin S. remained detained until April 20, 2022, when ICE released him on an Order of Supervision ("OSUP"). (*Id.* ¶ 21.) At the time of his release, the Bosnian government could not verify Ermin S.'s Bosnian citizenship. (*Id.*) Two days

[1] Although Ermin S.'s Petition is not filed under 28 U.S.C. § 2254, the Court may apply the rules governing that section per Rule 1(b).

after his release, on April 22, 2022, Ermin S.'s Bosnian citizenship was confirmed, and the Bosnian consulate requested U.S.-issued identification in order to create his travel documents. (*Id.* ¶ 22.)

On May 20, 2022, Ermin S. reported to ICE and was instructed to apply for a state-issued identification ("ID") by September 1, 2022. (*Id.* ¶ 23.) On August 1, 2022, Ermin S. reported to ICE and informed immigration officers that he had left his ID at home. (*Id.* ¶ 24.) Record checks showed that Ermin S. had been issued a state ID or applied for one. (*Id.*) He was instructed to mail a copy of his ID and report again on October 4, 2022. (*Id.*) Ermin S. mailed in a copy of a work ID and an expired LPR card. (*Id.*) When Ermin S. reported to ICE on November 1, 2022, he provided a copy of his Bosnian birth certificate. (*Id.* ¶ 25.) ICE instructed Ermin S. to apply for an Employment Authorization Document ("EAD") card and provided him contact information for the Immigrant Law Center in Moorhead, Minnesota, for assistance. (*Id.*) On February 1, 2023, Ermin S. reported to ICE and provided a copy of his EAD application, a fee waiver, and a copy of the email he had sent to the Immigrant Law Center seeking assistance. (*Id* ¶ 26.) On May 2, 2023, Ermin S. reported to ICE again with a letter from U.S. Citizenship and Immigration Services instructing him to complete the newest version of the EAD application. (*Id.* ¶ 27.) ICE instructed Ermin S. to report next on August 1, 2023. (*Id.*) Ermin S. failed to report on that date. (*Id.* ¶ 28.)

On May 5, 2025, while Petitioner was in custody at the Otter Tail County Jail, ICE emailed Ermin S. a Call-In Letter, Form G-56, which instructed him to report on June 11,

2025. (*Id.* ¶ 29.) On June 10, 2025, Ermin S. asked the jail staff to inform ICE that he would not be able to report on June 11 due to being in custody. (*Id.* ¶ 30.)

On July 14, 2025, Ermin S. was convicted of a felony, and the court stayed his sentence. (*Id.* ¶ 32).[2] On July 18, 2025, ICE arrested Ermin S. at the Otter Tail County probation and parole office. (*Id.* ¶ 33.) The same day, ICE served Ermin S. an OSUP Revocation Letter, notifying him of the revocation of his supervised release. (*Id.* ¶ 34.) On September 15, 2025, ICE served the Department of Motor Vehicles ("DMV") a subpoena for a copy of Ermin S.'s state ID. (*Id.* ¶ 35.) The DMV refused to provide the requested ID without a search warrant. (*Id.* ¶ 36.)

On October 15, 2025, ICE submitted a travel document request to the Bosnian Consulate. (*Id.* ¶ 37.) As of this writing, the application is pending and still requires a valid U.S.-issued ID to approve the application. (*Id.* ¶ 37.) On November 7, 2025, ICE served Ermin S. a 90-Day Decision to Continue Detention Letter. (*Id.* ¶ 38.) On February 21, 2026, ICE's St. Paul Field Office contacted ICE Headquarters ("HQ") for updates on Ermin S.'s travel document application. (*Id.* ¶ 39.) ICE HQ responded that the application remained

---

[2] This conviction adds to Ermin S.'s lengthy, but mostly non-violent, criminal history. (*See id.* ¶¶ 7, 8, 9, 10, 14, 15, 16.) Respondents' affidavit also states that Ermin S. was convicted of third-degree drug possession on June 17, 2025, in Becker County, Minnesota. (*See* Doc. 10 ¶ 31.) But MCRO records fail to confirm that conviction. MCRO records do indicate, however, that Ermin S. was convicted of third-degree drug possession in Becker County, Minnesota, on November 23, 2022. *See* Minnesota Case Records Online (MCRO) https://publicaccess.courts.state.mn.us/CaseSearch/ [https://perma.cc/TAS5-AB2A] (last visited, April 10, 2026.) Those records also show that Ermin S. has an active warrant for his arrest. *Id.*

pending and that a valid U.S.-issued ID was required. (*Id.*) Ermin S. remains in custody at the Crow Wing County Jail pending approval of his Bosnian travel document. (*Id.* ¶ 40.)

***8 U.S.C. § 1231***

The statutory framework codified at 8 U.S.C. § 1231 provides that the Attorney General shall remove a person present unlawfully in the United States "within a period of 90 days" after a final order of removal. 8 U.S.C. § 1231(a)(1)(A). When the government fails to remove someone within that 90-day window, any enduring detention may be unlawful unless there is a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 700-01 (2001). A period of detention for more than six months in these circumstances is presumptively unreasonable. *Id.*

***8 C.F.R. § 241.13(i)***

The implementing regulations at 8 C.F.R. § 241.13 set out the requirements the government must follow to revoke the release of a noncitizen subject to an order of supervision. It provides that release may be revoked where the noncitizen violates the conditions of his release. 8 C.F.R. § 241.13(i)(1). In those cases, the noncitizen "may be continued in detention for an additional six months in order to effect the [noncitizen]'s removal, if possible, and to effect the conditions under which the [noncitizen] had been released." *Id.* Revocation and return to custody may also occur, "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). In those cases, the noncitizen must be notified of the reasons for the Service's decision "upon revocation." *Id.* § 241.13(i)(3). Additionally, "promptly" after the noncitizen returns to

custody upon revocation, immigration officials must conduct an interview to afford the noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." *Id*. At that point, the noncitizen may submit evidence to show that there is no significant likelihood of removal in the reasonably foreseeable future or that he has not violated the terms of release. *Id*. The subsequent revocation custody review must include an evaluation of contested facts and a "determination whether the facts as determined warrant revocation and further denial of release." *Id*.

***Ermin S.'s Petition Challenging Detention***

Petitioner challenges his detention on the grounds that Respondents failed to follow their own procedure and violated his Due Process rights. In his Petition, Ermin S. challenges his detention under § 1226(a) of the Immigration and Nationality Act ("INA") and the Due Process clause of the Fifth Amendment. (Doc. 1 at 6.) Because he is subject to a final removal order and therefore § 1226(a) does not apply, the Court ordered Ermin S. to show cause why his Petition should not be dismissed. (Doc. 4.) In Response, Ermin S. raised new arguments challenging his detention under *Zadvydas*. (Doc. 7.) Because Respondents had not yet answered the Petition, the Court incorporated Petitioner's *Zadvydas* claim into his Petition along with his initial Due Process claims. (Doc. 8.)

In support of his claims, Ermin S. contends that "Respondent[s] have not demonstrated that there is need for me to be detained. I should have the opportunity to have a bond hearing before an immigration Judge. . ." (Doc. 1 at 6.)[3] He also argues that his

[3] While Mr. Saric has not formally abandoned his claims under 8 U.S.C. § 1226, he did not address them in his Response to the Court's Order to Show Cause. (Doc. 7.) As such, the

detention is unlawful under *Zadvydas* because he has been in custody over six months, and because removal is not significantly likely in the reasonably foreseeable future due to the inability to obtain travel documents. (Doc. 7 at 1, 2.)

Respondents contend that Petitioner's removal *is* likely in the reasonably foreseeable future because they are working to obtain travel documents. (Doc. 9 at 6.) Respondents also aver that they have complied with all procedural requirements pending removal, and argue that release is not the proper remedy for procedural violations anyhow. (*Id*. at 9, 10.)

## ANALYSIS

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325-26 (1867). The right to habeas relief extends to "persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Federal courts have the authority to order the release of "detained noncitizens when ICE fails to follow its own regulations." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (8th Cir. 2025).

The government's authority to re-detain noncitizens on supervised release is not without limit. It is bounded by the Due Process rights to which all are entitled under the Constitution, and by the government's own regulations codified at 8 C.F.R. § 241.13. These

---

Court will not consider further argument on the matters raised in Mr. Saric's original petition with respect claims of unlawful detention under 8 U.S.C. § 1226.

regulations are not advisory. They bind the government to act in accordance with their substance and procedure. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). In this case, the record reflects that Respondents failed to follow their own regulations under § 241.13(i) and so violated Ermin S.'s Due Process rights. Accordingly, the Court recommends that Ermin S.'s Petition be granted.

At the outset, the Court observes that 8 C.F.R. § 241.13 is relevant to Ermin S. but *Zadvydas* is not. Courts across the country, including those in this District, differentiate Petitioners released on supervision where a final removal order determination has already been made, from *Zadvydas* Petitioners who are detained continuously from the time of their final order for removal. *Vang v. Bondi*. 26-cv-1381 (JMG/DLM), 2026 WL 458195, at *4 (D. Minn. Feb. 18, 2026) ("But *Zadvydas* does not apply to noncitizens subject to an order of supervision, where there has already been a determination that a noncitizen is not likely to be removed.").[4] Ermin S. is a noncitizen with a final removal order who was released from immigration detention on supervised release and now faces revocation of that release: this is the precise circumstance contemplated by § 241.13(i). *See Levkovich v. Trump*, 26-

---

[4] *See also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) ("This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to re-detain [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation."); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) (same); *Nguyen v. Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (same); *Trejo v. Warden of ERO El Paso E. Mont*., 25- cv-401, 2025 WL 2992187, at *6-7 (W.D. Tex. Oct. 24, 2025) (same).

cv-938 (SHL/DLM) (D. Minn. Feb. 8, 2026) (describing § 241.13's applicability to Petitioner's revocation of supervised release after a final order of removal).

Respondents focus on *Zadvydas*, and spill little ink on Ermin S.'s Due Process claims, threadbare as they may be. Respondents assert that even if Ermin S.'s procedural claims were meritorious, there is a "mismatch" between his procedural claims and the habeas remedy he seeks. (Doc. 9 at 9.) But the Court finds 8 C.F.R. § 241.13—not *Zadvydas*—to be the proper framework under which to consider Ermin S.'s claims. And pursuant to that review, the Court recommends granting his Petition because his unlawful detention warrants habeas relief. *See Sarail A.*, 803 F. Supp. 3d at 779.

## I. INADEQUATE NOTICE AND OPPORTUNITY TO BE HEARD.

Ermin S. contends that his detention violates the Fifth Amendment's Due Process clause. He argues that Respondents failed to provide adequate justification for his detention. Respondents, for their part, allege their compliance with agency regulation but provide no details on how they did so. They fail to explain the reasons for the revocation of Ermin S.'s release. (*See generally* Doc. 9.) They fail to include a copy of the Notice of Revocation of Release provided to Ermin S. (*See generally* docket.) And they fail to mention whether an informal interview occurred promptly after Ermin S.'s detention. (*See generally* Docs. 9, 10.) Accordingly, based on the record before it, the Court finds that Respondents failed to abide by the requirements of 8 C.F.R. § 241.13(i), which protect the essential Due Process rights of notice and an opportunity to be heard.

**A. Notice.**

The implementing regulations at 8 C.F.R. § 241.13(i)(3) requires that when a noncitizen is notified of a release revocation, that notification must include the reasons for the revocation. 8 C.F.R. § 241.13(i)(3). Interpreting this provision, courts have held that those reasons must be individualized—boilerplate, generalized recitations are insufficient. *See Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025) (recommending habeas relief where ICE merely "parrot[ed]" the regulatory text and gave no reasons explaining the change in circumstances); *Sarail A.*, 803 F. Supp. 3d at 780 ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition.").

The record before the Court shows that ICE failed to adequately notify Ermin S. of the reasons for his re-detention. Respondents do not explain the reasons for Ermin S.'s detention in their Response, nor do they include the Notice provided to Ermin S. as an exhibit. Therefore, the Court finds that Respondents failed to apprise Ermin S. of the specific reasons for the revocation of his release in violation of 8 C.F.R. § 241.13(i)(3).

**B. Interview.**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). For noncitizens subject to re-detention, this fundamental right is secured by the informal interview requirement under 8 C.F.R. §

241.13(i)(3). The interview requirement applies no matter the basis of revocation: violation of supervised release or a changed circumstances finding. *Sarail A.*, 803 F. Supp. 3d at 789. Respondents discuss the interview requirement generally, but they are silent as to whether ICE provided Ermin S. an interview here. Accordingly, based on the record before it, the Court finds that Ermin S. was afforded no opportunity to contest the revocation of his release through an informal interview as was his right under 8 C.F.R. § 241.13(i)(3).

When "ICE re-detains a noncitizen and fails to comply with applicable revocation procedures, it violates the Due Process rights to which noncitizens are entitled." *Tou T. v. Noem, et al*, No. 26-cv-1670 (PJS/LIB), 2026 WL 712816, at *4 (D. Minn. March 11, 2026). Here, the records shows that ICE failed to follow its applicable revocation procedures when it did not provide specific reasons for revocation to Ermin S. and then deprived him of an informal interview. ICE therefore not only violated immigration regulations, but Ermin S.'s Fifth Amendment due process rights as well. For these reasons, the Court recommends that Petitioner Ermin S.'s Petition (Docs. 1, 7) be granted.

## II. IMPROPER GROUNDS FOR REVOCATION.

Although ICE's failure to follow revocation procedures alone warrants Ermin S.'s release, the Court additionally finds—on this record—that ICE lacked adequate grounds for revocation of the release. This is an alternative basis for Petitioner's release.

The implementing regulations at 8 C.F.R. § 241.13(i)(2) instruct that supervised release of a noncitizen subject to a final order for removal may be revoked in two circumstances: where there is a violation of supervised release or, "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the

[noncitizen] may be remove in the reasonably foreseeable future." 8. C.F.R. § 241.13(i)(2). "Absent specific statutory or regulatory language on the allocation of burden of proof. . . the Court is guided by the 'default' rule that the burden falls on the party who 'generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion.'" *Roble*, 803 F. Supp. 3d at 773 (internal citations omitted). This is true even though it remains the Petitioner's ultimate burden to prove entitlement to habeas relief. *Id*. Here, the Court finds that the Respondents have not met their burden to show either a violation of the terms of release, or a changed circumstances finding regarding Ermin S.'s removability.

**A. No violations of conditions of release.**

First, the Court finds that Respondents have not established that Ermin S. violated the conditions of his supervised release. In fact, Respondents never allege that Ermin S. violated the conditions of his release. Nor do they describe or include a copy of those conditions. Nor do Respondents include the Notice of Revocation which, as discussed above, should outline the specific reasons for revocation of release. Because Respondents have not met their burden to show that Ermin S. violated the conditions of his release, the Court finds that ICE lacked sufficient grounds under § 241.13(i)(1) to justify Ermin S.'s re-detention.

**B. No finding of changed circumstances upon revocation.**

The second basis on which to justify re-detention is a finding of changed circumstances that show that there is a "significant likelihood that [] [Ermin S.] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Ermin S. argues

that his removal is not reasonably foreseeable, noting that as far back as 2022 Bosnia could not locate his birth records, and further observing there are still no travel documents years later. While Respondents do not address the changed circumstances finding under § 241.13(i)(2), they do argue that Ermin S.'s removal is significantly likely in the reasonably foreseeable future under *Zadvydas*. Again, it is the Respondents' burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future. *See Roble*, 803 F. Supp. 3d at 772. The Court finds that the Respondents have not met that burden for the reasons that follow.

Courts in this District recognize that ICE's inability to obtain necessary travel documents from a foreign government may mean there is no significant likelihood of removal. *See Ahmed v. Brott*, No.14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015) (collecting cases), *R. & R. adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (holding that no likelihood of removal exists in the reasonably foreseeable future where "the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing a[] [noncitizen]'s removal."). Understandably, the procurement of travel documents from a foreign government may take a long time, but delay in obtaining such documents only justifies ongoing detention where the government's efforts are "diligent and reasonable." *Id.* For there to be no significant likelihood of removal in the foreseeable future, the delay must do more than "simply show[] that the bureaucratic gears . . . are slowly grinding away." *Id.* (citing *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001)).

Although it acknowledges that the standard on delay is a high one, the Court doubts that Respondents' efforts to secure Ermin S.'s travel documents since re-detention have been either diligent or reasonable. The record shows little effort on ICE's part to finalize Ermin S.'s travel documents. Ermin S. was re-detained on July 18, 2025. Two months later, in September 2025, ICE subpoenaed the DMV for Ermin S.'s state-issued ID. When the DMV refused to yield Petitioner's ID without a search warrant, ICE apparently took no further action while Ermin S.'s detention now clocks nine months. A product only of government inaction, this delay exceeds the slow grind of bureaucracy's gears.

But even if Respondents had shown a significant likelihood of removal in the reasonably foreseeable future, the Court finds that they did not make this showing *upon* revocation of release as required by the regulations. The changed circumstances finding must be made before a noncitizen's supervised release is revoked, not after. *Vang*, 2026 WL 458195, at *3 (". . . it is the government's burden to show a change in circumstance before revoking an order of supervision and detaining a person indefinitely"); *Pham v. Noem*, No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026); *see also Munagi v. McDonald*, No. 25-13175-NMG, 2025 WL 3688023, at *3 (D. Mass. Dec. 19, 2025) (same); *Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (same).

Here, Respondents have not met their burden to show the changed circumstances that made Ermin S.'s removal likely in the reasonably foreseeable future at the time of revocation. As discussed, the record before the Court does not include the reasons for the revocation of Ermin S.'s release on July 18, 2025. The record does show that, after ICE's

attempts to obtain travel documents and an ID for Ermin S. in 2022, it did not re-apply for documents until three months *after* the revocation of Ermin S.'s release. In other words, there were no changed circumstances on Ermin S.'s removability upon the revocation of his release. On July 18, 2025, Ermin S.'s removability was substantively unchanged from the last time ICE had attempted his removal in 2022. In fact, the record reflects that ICE instructed Petitioner to apply for employment authorization in November 2022 after attempts to secure his ID and again in May 2023—making him less removable, not more. This is because federal law establishes that noncitizens waiting removal under § 1231(a)(3) cannot receive work authorization unless the Attorney General makes a specific finding that the home country refuses to receive the noncitizen or that "the removal of the [noncitizen] is otherwise impracticable or contrary to the public interest." 8 U.S.C. § 1231(a)(7)(B).

Because ICE only applied for Bosnian travel documents on October 15, 2025, the Court finds that there was no change in circumstances at the time of revocation on July 18, 2025. Accordingly, Ermin S.'s re-detention is not justified under 8 C.F.R. § 241.13(i)(2).

## III. NO EVIDENTIARY HEARING IS REQUIRED.

An evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the existing record, and thus the Court finds no evidentiary hearing is necessary.

## IV. OBJECTIONS.

Given the expedited nature of these proceedings, the Court exercises its discretion to alter the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different deadline.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **April 22, 2026**. Ermin S. may file a response to any objections on or before **April 25, 2026**.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Ermin S.'s Petition for Writ of Habeas Corpus (Docs. 1, 7) be **GRANTED**; and;

2. Respondents be ordered to release Petitioner Saric from custody

   a. Immediately;

   b. Inside the State of Minnesota;

   c. And with all of Petitioner's personal effects in Respondents' possession or control, including, but not limited to, Ermin S.'s driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects.

Date: April 17, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).